UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.V.R., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 8:17-cv-01483-SHK <br><br><br> OPINION AND ORDER |

Plaintiff S.V.R.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," "Administration," or "Defendant") denying her application for supplemental security income ("SSI"), under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff filed an application for SSI on April 29, 2014, alleging disability beginning on October 20, 2011. Transcript ("Tr.") 200-08.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on March 28, 2016, ALJ Joan Ho determined that Plaintiff was not disabled. Tr. 24-37. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on June 29, 2017. Tr. 1-6. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the

---

[2] A certified copy of the Administrative Record was filed on January 29, 2018. Electronic Case Filing Number ("ECF No.") 12. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

Court] may not engage in second-guessing.") (citation omitted). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d

at 1098; 20 C.F.R. § 416.920.  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1.  Is the claimant presently working in a substantially gainful activity [("SGA")]?  If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI].  If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  See 20 C.F.R. § 404.1520(b).[3]

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to [SSI].  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  See 20 C.F.R. § 404.1520(c).

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to [SSI].  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  See 20 C.F.R. § 404.1520(d).

Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to [SSI].  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and

---

[3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [SSI]. See id.

Id. at 1098-99.

### B. Summary Of ALJ's Findings

The ALJ found at step one, that "[Plaintiff] has not engaged in [SGA] since April 29, 2014, the application date (20 CFR 416.971 et seq.)." Tr. 26. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: osteoarthritic changes of the right hand, depressive disorder rule out bipolar disorder, paranoid personality disorder (20 CFR 416.920(c))." Id. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Id.

/ / /

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 416.967(c) and the following limitations: she would be able to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; she would be able to stand and/or walk approximately six hours of an eight-hour workday and she would be able to sit for approximately six hours of an eight-hour workday with normal breaks; she would be able to frequently finger with the right upper extremity; and she would be limited to simple routine and repetitive tasks, but would be able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence.

Tr. 30. The ALJ then found, at step four, that "[Plaintiff] has no past relevant work [("PRW")] (20 CFR 416.965)." Tr. 35.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on April 18, 1961 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. (20 CFR 416.963)." Id. The ALJ observed that "[Plaintiff] had at least a high school education and is able to communicate in English (20 CFR 416.964)." Tr. 36. The ALJ then added that "[t]ransferability of job skills is not an issue because [Plaintiff] does not have [PRW] (20 CFR 416.968)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969 and 416.969(a))." Id. Specifically, the ALJ found that Plaintiff could perform the "unskilled[,]" "medium exertional level" occupations of "[h]and [p]ackager" as defined in the dictionary of occupational titles ("DOT") at DOT 920.587-018, "[w]arehouse [w]orker" at DOT 922.687-058, and "[d]ay [w]orker" at DOT 301.687-014. Tr.

6

37. The ALJ based her decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Id.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rule." Id. (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, since April 29, 2014, the date the application was filed. (20 CFR 416.920(g))." Id.

**C.    Issues Presented**

In this appeal, Plaintiff raises four issues, including whether: (1) "[t]he ALJ failed to properly weigh the medical opinion evidence and failed to properly determine [Plaintiff's] [RFC]"; (2) "[t]he ALJ failed to properly evaluate [Plaintiff's] testimony"; (3) "[t]he ALJ relied on a flawed hypothetical to the [VE]"; and (4) the ALJ's decision was invalid because the ALJ was "not constitutionally appointed at the time of the decision in this case." ECF No. 19, Joint Stipulation at 3; ECF No. 22, Letter to Judge at 1.

**D.    Court's Consideration Of Plaintiff's First Issue: Whether the ALJ Properly Weighed The Medical Evidence**

Plaintiff challenges the ALJ's consideration of three of her doctors' opinions, including Plaintiff's: (1) treating psychiatrist, Santi Pattara, M.D.; (2) examining psychiatrist Chun Kee Ryu, M.D.; and (3) treating rheumatologist, Krishan Khurana, M.D. ECF No. 19, Joint Stipulation at 3-15. Accordingly, the Court examines the ALJ's consideration of these three doctors' opinions.

///
///

#### 1. Defendants' Response

Defendant responds by arguing that by not challenging the opinion consulting examiner ("CE"), Dr. Sohini Parikh, M.D., who Defendant argues opined that Plaintiff had "at most, . . . mild impairments in some of her mental abilities[,]" Plaintiff "cannot show how the ALJ failed to rely on substantial evidence" when finding that Plaintiff was not disabled. Id. at 20. Defendant also argues that the ALJ gave Drs. Pattara's, Ryu's, and Khurana's opinions appropriate weight. Id. at 23-33.

#### 2. ALJ's Consideration Of Medical Opinions

The ALJ began her analysis of Drs. Pattara's, Ryu's, and Khurana's opinions by summarizing each of their respective findings throughout the record. With respect to Dr. Pattara's opinions, the ALJ observed that Dr. Pattara opined:

- on July 9, 2012, that Plaintiff "would have severe mental limitations and unable to be gainfully employed";
- on November 14, 2014, that Plaintiff "would have difficulty in work-like situations, completing tasks, focusing, following instructions, interacting with others and [ADLs]" and "would have many marked limitations with understanding and memory, concentration, persistence or pace, social interactions, and adaptation, and she would miss work more than three times a month";
- on October 14, 2015, that Plaintiff "could sit less than one hour, stand/walk less than one hour, lift/carry is not applicable, manipulative function is not applicable, unable to tolerate stress in a competitive work environment and she would miss work more than three times a month";
- on November 12, 2015, that Plaintiff "would have difficulty in work-like situations, completing tasks, focusing, following instructions, interacting with others and ADLs."

Id. (citing Tr. 330, 468-71, 473-77, 495-99, 500-03).

With respect to Drs. Khurana's and Ryu's opinions, the ALJ observed that:

- on March 25, 2013, Dr. Ryu opined that Plaintiff "is not capable of any employment and disability existed since early 2010, and there is marked limits with socialization, she is unable to maintain attention and concentration for any extended time, and marked limitations in carrying out instructions";
- on March 26, 2013, Dr. Ryu opined that Plaintiff "would have a [global assessment of functioning ("GAF") scores] of 35, marked limitations in 18 out of 20 categories, and incapable of even low stress";
- on December 2, 2015, Dr. Khurana opined that Plaintiff could 'lift/carry zero to five pounds occasionally, sit one hour, stand/walk one hour, must get up every 10 to 15 minutes to lie down for 40 minutes before returning to a seated position, rarely grasp, handle, finger or reach[,] take unscheduled breaks every 30 to 40 minutes, and she would miss work more than three times a month."

Id. (citing Tr. 536-40, 504-05, 506-13).

The ALJ gave "little weight" to Drs. Pattara's, Khurana's, and Ryu's opinions because: (1) "they are not consistent with the sparse medical evidence record as a whole," which "shows very little treatment"; (2) "they are not familiar with the . . . Administration's precise disability guidelines as evidenced by their opinions, . . . as they do not address the listings or any exertional or non-exertional limitations"; and (3) "the finding of disabled [is] reserved for the Commissioner." Tr. 34. The ALJ added that Dr. Pattara's opinions were inconsistent with "his own notes[,]" and that Drs. Ryu's and Khurana's opinions were "too extreme and restrictive in light of the record as a whole, including the many ADLs noted by Dr. Pattara[,]" which included "bath ok, dress ok, cook ok, drive ok, shop ok, use of fund ok." Tr. 29, 30, 33, 34, 35 (citing Tr. 437-38, 441-44, 446-50, 452-53, 455-56) (internal quotation marks omitted).

9

Finally, the ALJ found that "[t]he [GAF] score opinions are given little weight because they are a snapshot in time and do not accurately, reflect [Plaintiff's] functional abilities[]" and "also do correlate with the . . . Administration's precise disability guidelines, including the B and C criteria of the listings or an RFC." Tr. 34.

### 3. Standard To Review ALJ's Analysis Of Medical Opinions

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate

reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### 4. ALJ's Decision Is Not Supported By Substantial Evidence

As an initial matter, the ALJ did not find that Drs. Pattara's, Khurana's, and Ryu's opinions were contradicted by the opinions of another doctor.[4] Therefore, the clear and convincing standard applies here. Trevizo, 871 F.3d 675. Moreover, to the extent that Defendant argues that the ALJ did not err by rejecting Drs. Pattara's, Khurana's, and Ryu's opinions because a CE, Dr. Sohini, opined that Plaintiff had only mild impairments in some of her mental abilities, the Court is not persuaded. As discussed above, the ALJ must provide either specific and legitimate, or clear and convincing reasons to reject a treating or examining doctor's opinion. Here, none of the three reasons provide by the ALJ for rejecting Drs. Pattara's, Khurana's, and Ryu's opinions meet either test.

#### a. *ALJ's First Reason Fails*

With respect to the ALJ's first reason for rejecting Drs. Pattara's, Khurana's, and Ryu's opinions—that their opinions were not consistent with the medical evidence record as a whole—this reason fails because it provides no information about which facts and evidence in the record were inconsistent with

---

[4] The ALJ gave "significant weight" to the opinions of the state Disability Department Services ("DDS") consultative examiners ("CE"). Tr. 33. However, the ALJ did not make specific findings of how these doctors' opinions contradicted those of Drs. Khurana, Ryu, or Pattara. Trevizo, 871 F.3d at 675 (quoting Magallanes, 881 F.2d at 751).

11

which findings the doctors made. Thus, because the ALJ's wholesale rejection of the three doctor's opinions due to inconsistencies with the record as a whole includes no summary of the conflicting evidence, interpretations of that specific evidence, or specific findings about that evidence, the Court finds that the first reason provided by the ALJ for rejecting Drs. Pattara's, Khurana's, and Ryu's opinions was neither clear and convincing, nor specific and legitimate. Trevizo, 871 F.3d at 675 (quoting Magallanes, 881 F.2d 751). Moreover, to the extent the ALJ went on to reject Dr. Pattara's opinions due to inconsistencies with his own treatment notes, and Drs. Khurana's and Ryu's opinions because they were too extreme in light of the ADLs noted by Dr. Pattara, the Court is similarly unpersuaded by the ALJ's reasoning.

With respect to the ALJ finding that Dr. Pattara's opinions were inconsistent with his own treatment notes, the ALJ failed to identify which of Dr. Pattara's opinions were inconsistent with which of Dr. Pattara's treatment notes. This bare assertion that is void of any specific facts or explanation does not amount to a clear and convincing, or even a specific and legitimate, reason for assigning little weight to Drs. Pattara's opinions. See Garrison, 759 F.3d at 1012 ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct."); see also id. at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996))).

However, to be sure, the Court searched for inconsistencies in the record between Dr. Pattara's noted observations and the opinions Dr. Pattara ultimately endorsed and found that the only identifiable inconsistencies indicate that Plaintiff's ADLs appear to be more limited than Dr. Pattara concluded. For

example, as the ALJ correctly noted, Dr. Pattara found that Plaintiff could "bath ok, dress ok, cook ok, drive ok, shop ok, use of fund ok." Tr. 29, 30, 33, 35 (citations and quotation marks omitted). An inspection of the record, however, reveals that Dr. Pattara noted that Plaintiff presented to examinations "in unclean and untidy clothes. She does not groom her hair properly. She has a foul smell and poor body hygiene." Tr. 332. Elsewhere in the record, Dr. Pattara noted that Plaintiff presented "in untidy and unclean clothes" and that she "was brought to office by her friend as [Plaintiff] [wa]s unable to drive a car" at that time. Tr. 468-69. Finally, Dr. Pattara noted on another occasion that "[Plaintiff] is brought to this office by her relative as she is unable to drive a car. She is in untidy and unclean clothes." Tr. 500.

Thus, on the record before the Court, the only inconsistencies between Dr. Pattara's observations and the limitations Dr. Pattara ultimately endorsed appear to indicate a diminished capacity to adequately perform all the ADLs endorsed by Dr. Pattara, as cited by the ALJ. On remand, the Agency shall identify which of Dr. Pattara's notes conflict with which of Dr. Pattara's opinions.

With respect to the ALJ's finding that Drs. Khurana's and Ryu's opinions were too extreme in light of the ADLs noted by Dr. Pattara, again, the ALJ provided no interpretation of how the ADLs noted by Dr. Pattara undercut Drs. Khurana's and Ryu's opinions. Trevizo, 871 F.3d at 675 (quoting Magallanes, 881 F.2d 751); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("The . . . Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Moreover, as discussed above, Plaintiff's ADLs appear to be more limited than Dr. Pattara concluded.

Thus, even assuming that Plaintiff was able to perform all the ADLs noted by Dr. Pattara throughout the relevant time period, because the ALJ did not articulate how Plaintiff's ability to perform these ADLs undercuts Drs. Khurana's and Ryu's opinions, this was not a clear and convincing, or a specific and legitimate, reason for assigning little weight to Drs. Khurana's and Ryu's opinions. See Garrison, 759 F.3d at 1012-13.

### b. *ALJ's Second And Third Reasons Fail*

With respect to the ALJ's second and third reasons for rejecting Drs. Pattara's, Khurana's, and Ryu's opinions—because the doctors are not familiar with the Administration's disability guidelines, and because the finding of being disabled are reserved for the Commissioner—the Court finds that these were not clear and convincing, nor specific and legitimate, reasons for rejecting the doctors' opinions.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). "In determining whether [a claimant is] disabled, [the Administration] will always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [the Administration] receive[s]." Id. at § 416.927(b).

"Opinions on some issues, . . . are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." Id. at § 416.927(d). One issue reserved for the Commissioner is "[o]pinions that [the claimant is] disabled." Id. at § 416.927(d)(1). "Although the Administration consider[s] opinions from medical sources on issues such as whether [a claimant's] impairment(s) meets or equals the

14

requirements of any impairment(s) in the Listing[s] . . . , [RFC] . . . , or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner." Id. at § 416.927(d)(2). In determining whether a claimant meets the statutory definition of disability, "[the Administration] review[s] all of the medical findings and other evidence that support a medical source's statement that [a claimant is] disabled." Id. at § 416.927(d)(1).

    Here, the regulations required the Administration to consider all the medical opinions in Plaintiff's case record to determine whether Plaintiff was disabled under the Act. Id. at §§ 416.927(b), 416.927(d)(1). The regulations, however, carved out an exception for opinions relating to the ultimate determination of disability under the Act. Id. at § 416.927(d)(1). Therefore, the ALJ was not obligated to accept Drs. Pattara's, Khurana's, and Ryu's opinions regarding whether Plaintiff was disabled under the Act, because that determination is reserved for the Administration. Id. The carved-out exception for opinions relating to the ultimate determination of disability under the Act, however, do not negate the Administration's duty to consider the remainder of the doctors' opinions that reflected judgments about the nature and severity of Plaintiff's impairment. Therefore, the Administration's authority to determine the ultimate issue of whether Plaintiff is disabled under the Act, as granted in 20 C.F.R. § 416.927(d)(1), was not a clear and convincing or a specific and legitimate reason to reject the portions of Drs. Pattara's, Khurana's, and Ryu's opinions that reflected judgments about the nature and severity of Plaintiff's impairment, and that the ALJ was required to consider under 20 C.F.R. §§ 416.927(b) and 416.927(d)(1).

    Moreover, the regulations do not require—and Defendant points to no authority demonstrating—that doctors who provide opinions reflecting judgments about the nature and severity of a claimant's impairments must be familiar with the Administration's disability guidelines. Thus, the court finds that the doctors'

alleged ignorance of the Administration's disability guidelines was not a clear and convincing or a specific and legitimate reason to reject Drs. Pattara's, Khurana's, and Ryu's opinions.

### c. *ALJ's Rejection Of GAF Scores Fails*

Finally, the ALJ's rejection of the GAF scores assessed by Drs. Pattara and Ryu is not supported by substantial evidence. To the extent the ALJ rejected the GAF scores because they do not accurately reflect Plaintiff's functional abilities, the ALJ fails to provide any explanation of how these scores are inconsistent with Plaintiff's functional limitations. See Garrison, 759 F.3d at 1012-13. ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct."); see also id. at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.") (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Moreover, to the extent the ALJ rejected the GAF scores because they "do correlate with the . . . Administration's precise disability guidelines, including the B and C criteria of the listings or an RFC[,]" Defendant does not present—and the Court cannot find—any authority demonstrating that evidence which correlates with the Administration's disability guidelines should be rejected. Conversely, it seems that evidence correlating with the Administration's disability guidelines would support a finding of disability.

Lastly, to the extent the ALJ rejected the GAF scores because they were a "snapshot in time[,]" this fails to "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship" that Drs. Pattara and Ryu had with Plaintiff. Trevizo, 871 F. 3d at 676 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). This lack of discussion

regarding: (1) the length of Plaintiff's treatment relationship with Drs. Pattara and Ryu; (2) the fact that Plaintiff saw, at least, Dr. Pattara frequently; and (3) the nature or extent of Plaintiff's visits with these doctors, also constitutes reversible error. See id., (ALJ's "fail[ure] to apply the appropriate factors . . . such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion" when "determining the extent to which the [plaintiff's treating doctor's] opinion should be credited . . . alone constitutes reversible legal error.").

Accordingly, because the ALJ's rejection of Drs. Pattara's, Khurana's, and Ryu's opinions was not supported by clear and convincing or specific and legitimate reasons, the Court finds that the ALJ's decision is not supported by substantial evidence. As such, the Court does not address Plaintiff's remaining assignments of error.

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED: 1/10/2019

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge